Mark D. Poniatowski, Esq. (#123405)
Kimberly F. Leding, Esq. (#233618)
Meera T. Parikh, Esq. (#217996)
LAW OFFICES OF MARK D. PONIATOWSKI
PROFESSIONAL CORPORATION
20980 Redwood Road, Suite 200
Castro Valley, California 94546
Telephone:  (510) 881-8700
Facsimile:  (510) 881-8702

Attorneys for Plaintiff Caterpillar Financial Services Corporation

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re | Chapter 7 |
| LUIS CARLOS STAHL, | Case No. 6:09-bk-30494-DS |
| Debtors. | |
| _____/ | |
| CATERPILLAR FINANCIAL SERVICES CORPORATION, a Delaware corporation, | Adversary Proceeding No. 6:11-ap-01784-DS |
| Plaintiff, | DECLARATION OF SHERESE DOSSMAN RE: PLAINTIFF'S TRIAL DECLARATION |
| v. | |
| LUIS CARLOS STAHL, | DATE:        November 30, 2011<br>TIME:        9:00 a.m.<br>JUDGE:       Hon. Deborah Saltzman<br>COURTROOM: 302 |
| Defendant. | 3420 Twelfth Street<br>Riverside, CA 92501 |
| _____/ | |

1.      I am currently employed by secured creditor Caterpillar Financial Services

Corporation ("Plaintiff").  I have been employed by Plaintiff in its legal collections department

for the Western Region of the United States for two years.

2.      I am the custodian of the books, records and files of Plaintiff as they pertain to the

account of Luis Stahl dba Stahl Construction ("Defendant").  I have personally worked on the

LAW OFFICES OF
*Mark D. Poniatowski*
PROFESSIONAL CORPORATION
20980 REDWOOD ROAD
SUITE 200
CASTRO VALLEY, CA 94546

In re Luis Carlos Stahl, Chapter 7, Case No. 6:09-bk-30494-DS,                Page -1-
Adversary Proceeding No. 6:11-ap-01784-DS
DECLARATION OF SHERESE DOSSMAN RE: PLAINTIFF'S TRIAL DECLARATION

1    books, records and files related to Defendant's account.

2        3.    All of the records, documents, memoranda, reports and/or data compilations

3    described herein below were made and are maintained by Plaintiff in the ordinary course of its

4    business and are currently under my custody.

5        4.    All of the records, documents, memoranda, reports and/or data compilations

6    described below of acts, events, conditions or opinions contained therein were made by

7    employees or agents of Plaintiff, with personal knowledge, as a regular business activity of

8    Plaintiff.  Said employees and/or agents have a business duty to Plaintiff to make such entries in

9    the books and records of Plaintiff.

10        5.    All such records, documents, memoranda, reports and/or data compilations

11    described below are kept by Plaintiff in the course of its regularly conducted business activities,

12    and were made at or near the time by, or from information transmitted by, an employee or agent

13    with knowledge of the act, event, condition or opinion and a duty to make such records,

14    documents, memoranda, reports and/or data compilations.

15        6.    To the extent that I have personal knowledge of the facts set forth herein, I will

16    set forth said personal knowledge.  To the extent that I do not have personal knowledge, then I

17    have gained such knowledge in the course and scope of my employment by Plaintiff, by

18    reviewing the records, documents, memoranda, reports and/or data compilations in Plaintiff's

19    files, by my knowledge of Plaintiff's business practices.

20        7.    If called upon to testify in this action as to the matters set forth in this declaration,

21    I could and would competently testify thereto.

22        8.    On or about July 21, 2005, Mitchum Equipment LLC ("Buyer") entered into an

23    Installment Sale Contract (Security Agreement) (the "Security Agreement") with Johnson

24    Machinery Co. ("Dealer") for the purchase of one (1) Caterpillar model 216B Skid Steer Loader,

25    Serial No. RLL01611(the "Collateral") for the total purchase price, including finance charges, of

26    Thirty-One Thousand Four Hundred Seven and 60/100 Dollars ($31,407.60).  A true and correct

27    copy of the Security Agreement is attached hereto as Exhibit "A" and is incorporated herein by

28    reference.

LAW OFFICES OF
*Mark D. Poniatowski*
PROFESSIONAL CORPORATION
20980 REDWOOD ROAD
SUITE 200
CASTRO VALLEY, CA 94546

In re Luis Carlos Stahl, Chapter 7, Case No. 6:09-bk-30494-DS,                              Page -2-
Adversary Proceeding No. 6:11-ap-01784-DS
DECLARATION OF SHERESE DOSSMAN RE: PLAINTIFF'S TRIAL DECLARATION

9.      Pursuant to the terms of the Security Agreement, for valuable consideration, Dealer assigned its rights under the Security Agreement, and in and to the Collateral, to Plaintiff. A true and correct copy of the Assignment of Installment Sale Contract (Without Recourse) of the Security Agreement between Plaintiff and Dealer is attached hereto as Exhibit "B" and is incorporated herein by reference.

10.      Pursuant to the terms of the Security Agreement, Buyer agreed, in part, to make monthly installment payments of Five Hundred Twenty-Three and 46/100 Dollars ($523.46). Exhibit A, Section 1.

11.      To secure his performance under the Security Agreement, Buyer granted Dealer a security interest in the Collateral.  See Exhibit A, Section 9.

12.      Plaintiff filed a UCC-1 Financing Statement with the California Secretary of State on July 22, 2005, perfecting its security interest in the Collateral.  A true and correct copy of that Financing Statement is attached hereto as Exhibit "C" and is incorporated herein by reference.

13.      Plaintiff fully performed under the Security Agreement by financing the purchase of the Collateral by Buyer.

14.      On October 9, 2006, with Plaintiff's express consent, Defendant entered into a Transfer And Assumption Agreement with Buyer wherein Defendant unconditionally assumed the terms and conditions of the Security Agreement ("Transfer And Assumption Agreement"). A true and correct copy of the Transfer And Assumption Agreement is attached hereto as Exhibit "D" and is incorporated herein by reference.

15.      Pursuant to the Transfer And Assumption Agreement, Buyer granted and conveyed to Defendant "all of Transferor's right, title and interest in and to the Contract and the Property."  Exhibit D, Section 1.

16.      At the time the Transfer And Assumption Agreement was executed, there was forty-seven (47) monthly installments of Five Hundred Twenty-Three and 46/100 Dollars ($523.46) remaining due under the Security Agreement.  Exhibit D, page 1.

17.      Defendant agreed and promised to pay "(i) all installments in the amounts set forth above and (ii) all other moneys that become due under the Contract after the date hereof to

LAW OFFICES OF
*Mark D. Poniatowski*
PROFESSIONAL CORPORATION
20980 REDWOOD ROAD
SUITE 200
CASTRO VALLEY, CA 94546

In re Luis Carlos Stahl, Chapter 7, Case No. 6:09-bk-30494-DS,                    Page -3-
Adversary Proceeding No. 6:11-ap-01784-DS
DECLARATION OF SHERESE DOSSMAN RE: PLAINTIFF'S TRIAL DECLARATION

1  Caterpillar, its successors and assigns." Exhibit D, Section 2.

2      18.    Defendant further "unconditionally assumes, becomes a party to, and agrees to

3  perform the Contract and all the terms, conditions and provisions thereof and further agrees to

4  pay all amounts that become due under the Contract, as though Transferee was named in the

5  Contract." Exhibit D, Section 3.

6      19.    Finally, Defendant granted Plaintiff a security interest in the Collateral to secure

7  performance of Defendant's obligations. See Exhibit D, Section 7.

8      20.    Plaintiff filed a UCC-1 Financing Statement with the California Secretary of State

9  on October 9, 2006, perfecting its security interest in the Collateral.  A true and correct copy of

10  that Financing Statement is attached hereto as Exhibit "E" and is incorporated herein by

11  reference.

12      21.    To further induce Plaintiff to consent to the Transfer And Assumption Agreement,

13  Defendant executed a Guaranty of Payment wherein he agreed to guaranty the prompt and

14  punctual payment of his obligations under the Transfer And Assumption Agreement and the

15  Security Agreement.  A true and correct copy of the Guaranty of Payment is attached hereto as

16  Exhibit "F" and is incorporated herein by reference.

17      22.    Hereinafter, the Security Agreement and the Transfer And Assumption

18  Agreement may be referred to, collectively, as the "Agreements."

19      23.    Defendant has defaulted under the terms of the Agreements by, among other

20  defaults, failing to make the monthly payments when due under the terms of the Agreements.  A

21  true and correct copy of the Open Payments and History to the filing date of the Bankruptcy

22  Petition is attached hereto as Exhibit "H" and is incorporated herein by reference.

23      24.    Plaintiff notified Defendant of his default under the Security Agreement and

24  demanded possession of the Collateral if the balance due was not paid.

25      25.    As a result of Defendant's default, and pursuant to the terms of the Security

26  Agreement, Plaintiff is entitled to take possession of the Collateral.  Exhibit A, Section 8.

27      26.    As a proximate result of Defendant's breach of the Agreements, Plaintiff has

28  suffered damage.  As of October 15, 2010, Defendant is indebted to Plaintiff under the terms of

LAW OFFICES OF
*Mark D. Poniatowski*
PROFESSIONAL CORPORATION
20980 REDWOOD ROAD
SUITE 200
CASTRO VALLEY, CA 94546

In re Luis Carlos Stahl, Chapter 7, Case No. 6:09-bk-30494-DS,                                    Page -4-
Adversary Proceeding No. 6:11-ap-01784-DS
DECLARATION OF SHERESE DOSSMAN RE: PLAINTIFF'S TRIAL DECLARATION

1  the Agreements in the sum of Four Thousand Four Hundred Two and 54/100 Dollars

2  ($4,402.54).  A true and correct copy of the Payoff Statement dated October 15, 2010 is attached

3  hereto as Exhibit "G" and is incorporated herein by reference.

4       27.    The Security Agreement further provides that "Purchaser agrees to pay all

5  reasonable attorneys' fees (to the extent permitted by applicable law) and all costs and expenses

6  incurred by Seller in enforcing this Contract."  Exhibit A, Section 8.  By reason of Defendant's

7  conduct, Plaintiff has incurred such fees and costs, including, if necessary, expert witness fees,

8  and will continue to do so.  As of December 31, 2010, the total amount of attorneys' fees and

9  costs incurred by Plaintiff herein is Eighteen Thousand Fifty-Eight and 08/100 ($18,058.08).

10       28.    Plaintiff is informed and believes, and thereon alleges, that Defendant is in

11  possession, custody and control of the Collateral based on Plaintiff's communications with

12  Defendant contained in Plaintiff's Customer Collection Comments for Defendant's account, and

13  the representations of Defendant's counsel to the Court and Plaintiff's counsel.  A true and

14  correct copy of the Customer Collection Comments is attached hereto as Exhibit "I" and is

15  incorporated herein by reference.

16       29.    At no time has Defendant notified Plaintiff that he has sold or otherwise

17  transferred the Collateral and/or that Defendant is not in possession of the Collateral.

18       30.    Plaintiff has demanded possession of the Collateral, but Defendant has failed and

19  refused, and continues to fail and refuse to return the Collateral to Plaintiff.

20       31.    Defendant's failure to return the Collateral, and Defendant's exercise of right of

21  ownership over the Collateral, is wrongful, is unauthorized by Plaintiff, and is to the exclusion of

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

LAW OFFICES OF
*Mark D. Poniatowski*
PROFESSIONAL CORPORATION
20980 REDWOOD ROAD
SUITE 200
CASTRO VALLEY, CA 94546

In re Luis Carlos Stahl, Chapter 7, Case No. 6:09-bk-30494-DS,                                        Page -5-
Adversary Proceeding No. 6:11-ap-01784-DS
DECLARATION OF SHERESE DOSSMAN RE: PLAINTIFF'S TRIAL DECLARATION

1   Plaintiff's rights.

2       I declare under penalty of perjury under the laws of the State of California, that the

3   foregoing is true and correct.

4       Executed January 5 2011, at Nashville, Tennessee.

5

6

7       SHERESE DOSSMAN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
Mark D. Poniatowski
PROFESSIONAL CORPORATION
20960 REDWOOD ROAD
SUITE 200
CASTRO VALLEY, CA 94546

In re Luis Carlos Stahl, Chapter 11, Case No. 6:09-bk-30494-DS,
Adversary Proceeding No. 6:09-ap-01723-DS
DECLARATION OF SHERESE DOSSMAN RE: PLAINTIFF'S TRIAL DECLARATION

Page -6-

EXHIBIT "A"

# INSTALLMENT SALE CONTRACT (SECURITY AGREEMENT)

**PURCHASER(S):**
MITCHUM EQUIPMENT, LLC
41330 DATE STREET
MURRIETTA, CA 92562

**SELLER (DEALER):**
JOHNSON MACHINERY CO.
800 EAST LA CADENA DRIVE
P.O. BOX 351
RIVERSIDE, CA 92502-0351

County: RIVERSIDE

Subject to the terms and conditions set forth below and on the following page(s) hereof, Seller hereby sells the equipment described below (the "Unit" or "Units") to Purchaser, and Purchaser (if more than one, jointly and severally), having been offered both a cash sale price and a time sale price, hereby buys the Units from Seller on a time sale basis.

| NEW OR USED | (IF USED) FIRST USED | MODEL | DESCRIPTION OF UNIT(S) | SERIAL# | DELIVERED CASH SALE PRICE |
|---|---|---|---|---|---|
| (1) New | | 216B | Caterpillar Skid Steer Loader | RLL01611 | $26,391.00 |

| FIRST USED | DESCRIPTION OF ADDITIONAL SECURITY (MAKE, MODEL, & SERIAL NUMBER) | | |
|---|---|---|---|

| | | | |
|---|---|---|---|
| | Sub-Total .......................................$ | | 26,391.00 |
| | Sales Tax .......................................$ | | 2,045.30 |
| 1. | Total Cash Sale Price .......................$ | | 28,436.30 |
| | Cash Down Pay | 0.00 | |
| | Net Trade-in Allow | 0.00 | |
| 2. | Total Down Payment .......................$ | | 0.00 |
| 3. | Unpaid Balance of Cash Price (1 - 2) .....$ | | 28,436.30 |
| 4. | Official Fees (Specify) .......................$ | | 350.00 |
| | Document Fee | 350.00 | |
| | Other Fees | 0.00 | |
| 5. | Physical Damage Insurance ...............$ | | |
| 6. | Principal Balance (Amount Financed) (3 + 4 + 5) ...........$ | | 28,786.30 |
| 7. | Finance Charge (Time Price Differential) .................$ | | 2,621.30 |
| 8. | Time Balance (Total of Payments) (6 + 7) ...............$ | | 31,407.60 |
| 9. | Time Sale Balance (Total of Payment Price) (2 + 8) ........$ | | 31,407.60 |
| 10. | Annual Percentage Rate | | 3.48% |
| 11. | Date FINANCE CHARGE begins to accrue | | JUL 2 1 2005 |

**FIRST USED**   DESCRIPTION OF TRADE-IN EQUIPMENT
(MAKE, MODEL & SERIAL NUMBER)

Trade-in Value                     0.00
Less Owing to                      0.00
Net Trade-in Allowance             0.00

Location of Units:   41330 DATE STREET
MURRIETA, CA 92562, RIVERSIDE

Purchaser hereby sells and conveys to Seller the above described Trade-in Equipment and warrants it to be free and clear of all claims, liens, security interests and encumbrances except to the extent shown above.

1. PAYMENT: Purchaser shall pay to Seller, at Caterpillar Financial Services Corporation: PO Box 100647, Pasadena, CA 91189-0647 or such other location Seller designates in writing, the Time Balance (Item 8 above) as follows (check (a) or (b)):

__X__ (a) in 60 equal monthly installments of $523.46 each, with the first installment due on __8/1/05__, and the balance of the installments due on the like day of each month thereafter, (except no payments shall be due during the month(s) of n/a), until the entire indebtedness has been paid; or

___ (b) in accordance with the Payment Schedule attached to this Contract.

(Provisions of section 1 continued on next page.)
        SEE FOLLOWING PAGE(S) FOR ADDITIONAL TERMS AND CONDITIONS WHICH ARE A PART OF THIS CONTRACT.

LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.

NOTICE TO PURCHASER: (1) DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES; (2) YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN; (3) UNDER THE LAW YOU MAY HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE; (4) IF THIS CONTRACT IS NOT EXECUTED BY PURCHASER ON OR BEFORE September 12, 2005 THE CONTRACT MAY BE CONSIDERED NULL AND VOID BY SELLER.

## ADDITIONAL TERMS AND CONDITIONS

**1. PAYMENT (continued):** Purchaser shall pay to Seller a late payment charge equal to the lesser of (a) the highest charge allowed by law or (b) 5% of the amount of any payment (including any accelerated payment) not made when due under this Contract (or such later date as may be required by applicable law). Upon prepayment in full or acceleration of the total unpaid Time Balance, Purchaser shall receive a rebate of the unearned portion of the Finance Charge computed on an actuarial basis less a processing fee. Except as otherwise expressly provided herein, the obligations of Purchaser hereunder shall not be affected by any defect in, damage to, loss of or interference with possession or use of any Unit, by the attachment of any lien or claim to any Unit, or for any other cause.

**2. DISCLAIMER OF WARRANTIES:** Purchaser acknowledges and agrees that Seller is not the manufacturer of the Unit(s) and that Purchaser has selected each Unit based on Purchaser's own judgment without any reliance whatsoever on any statements or representations made by Seller. AS BETWEEN SELLER AND PURCHASER, THE UNIT(S) ARE PROVIDED "AS IS" WITHOUT ANY WARRANTIES OF ANY KIND. PURCHASER HEREBY EXPRESSLY DISCLAIMS a) ALL WARRANTIES OF MERCHANTABILITY, b) ALL WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, AND c) ALL WARRANTIES AGAINST INFRINGEMENT OR THE LIKE. Seller assigns to Purchaser its interest in any of the manufacturer's warranties on the Unit(s).

**3. POSSESSION, USE AND MAINTENANCE:** Purchaser shall not (a) use any Unit improperly, carelessly, unsafely or in violation of any law or regulation or for personal, family, or household purposes or for any purpose other than in Purchaser's business (including agricultural business); (b) permit the use of any Unit by anyone other than Purchaser or change the permanent location of any Unit from the county and state specified above without the prior written consent of Seller; or (c) sell, lease, assign or transfer, or create or suffer to exist any lien, claim, security interest or encumbrance on any of its rights hereunder or in any Unit. The Units are and shall remain personal property irrespective of their use or manner of attachment to realty. Upon prior notice to Purchaser, Seller or its agent shall have the right (but not the obligation) at all reasonable times to inspect any Unit. Purchaser shall at its expense maintain the Units in good operating order, repair and condition. Purchaser shall not alter any Unit or affix any equipment to any Unit if such alteration or addition would impair the originally intended function or reduce the value of such Unit. Any alteration or addition to any Unit shall be at the sole risk of Purchaser.

**4. TAXES:** Purchaser shall promptly pay all taxes, assessments, fees and other charges when levied or assessed against any Unit or the ownership or use thereof, or this Contract or any payments made or to be made to Seller.

**5. WAIVER AND INDEMNITY:** PURCHASER HEREBY AGREES TO RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS SELLER, ITS DIRECTORS, OFFICERS, EMPLOYEES, AGENTS AND ASSIGNS FROM AND AGAINST ANY CLAIMS OF PURCHASER OR THIRD PARTIES, INCLUDING CLAIMS BASED UPON BREACH OF CONTRACT, BREACH OF WARRANTY, PERSONAL INJURY, PROPERTY DAMAGE, STRICT LIABILITY OR NEGLIGENCE, FOR ANY LOSS, DAMAGE OR INJURY CAUSED BY OR RELATING TO THE DESIGN, MANUFACTURE, SELECTION, DELIVERY, CONDITION, OPERATION, USE, OWNERSHIP, MAINTENANCE OR REPAIR OF ANY UNIT. FURTHER, PURCHASER AGREES TO BE RESPONSIBLE FOR ALL COSTS AND EXPENSES, INCLUDING REASONABLE ATTORNEYS' FEES, INCURRED BY SELLER OR ITS DIRECTORS, OFFICERS, EMPLOYEES, AGENTS AND ASSIGNS IN DEFENDING SUCH CLAIMS OR IN ENFORCING THIS PROVISION. UNDER NO CONDITION OR CAUSE OF ACTION SHALL SELLER BE LIABLE FOR ANY LOSS OF ACTUAL OR ANTICIPATED BUSINESS OR PROFITS OR ANY SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES.

**6. INSURANCE:** Purchaser, at its expense, shall keep each Unit and all equipment listed as Additional Security insured against all risks for their full insurable value and shall maintain comprehensive public liability insurance in an amount reasonably acceptable to Seller. All such insurance shall be in such form and with such companies as Seller shall reasonably approve, shall be primary, without right of contribution from any insurance carried by Seller, and shall provide that such insurance may not be cancelled or altered so as to affect the interest of Seller without at least 30 days' prior written notice to Seller. All insurance covering loss or damage to the Units and Additional Security shall name Seller (or its designee) as loss payee and be payable to Seller as its interest may appear. Purchaser agrees to notify Seller of any occurrence which may become the basis of an insurance claim hereunder and not to make any adjustments with insurers without Seller's prior written consent. Prior to the first delivery of any Unit to Purchaser, Purchaser shall deliver to Seller satisfactory evidence of such insurance coverage.

**7. EVENTS OF DEFAULT:** Each of the following shall constitute an "Event of Default" hereunder: (a) Purchaser shall fail to make any payment to Seller when due hereunder or fail to observe or perform any other covenant, agreement or warranty made by Purchaser hereunder; (b) any representation or warranty of Purchaser contained herein or in any document furnished to Seller in connection herewith shall be incorrect or misleading when made; (c) any Unit or additional security shall become lost, stolen, destroyed, irreparably damaged or subject to any sale, lien, claim, security interest or encumbrance (other than in favor of Seller or its assignee); (d) any default shall occur under any other agreement between Purchaser and Seller; (e) Purchaser or any guarantor of this Contract shall cease to do business, become insolvent, make an assignment for the benefit of creditors or file any petition under any bankruptcy, reorganization, insolvency or moratorium law, or any other law for the relief of debtors; (f) any involuntary petition shall be filed under any bankruptcy statute against Purchaser or any guarantor of this Contract or any receiver, trustee, or similar official shall be appointed to take possession of the properties of Purchaser or any guarantor of this Contract unless such petition or appointment ceases to be in effect within 30 days of said filing or appointment; (g) Seller shall reasonably deem itself to be insecure; or (h) any breach or repudiation by any guarantor shall occur under any guaranty obtained by Seller in connection with this Contract.

**8. REMEDIES:** If any Event of Default shall occur, Seller may, at its option, do any one or more of the following: (a) Declare all amounts due or to become due under this Contract, excluding any unearned portion of the Finance Charge, immediately due and payable; (b) recover any additional damages and expenses sustained by Seller by reason of the breach of any covenant, representation or warranty contained in this Contract; (c) enforce the security interest granted hereunder; (d) without notice, liability or legal process, enter upon the premises where any of the Units or additional security may be and take possession thereof, and (e) require Purchaser to assemble the Units and additional security and make them available to Seller at a place designated by Seller which is reasonably convenient to both parties. Time is of the essence of this Contract. Seller shall have all rights given to a secured party by law and may retain all monies theretofore paid by Purchaser hereunder as compensation for the reasonable use of the Units by Purchaser. Seller may, at its option, undertake commercially reasonable efforts to sell the Units and additional security, and the proceeds of any such sale shall be applied: First, to reimburse Seller for all reasonable expenses of retaking, holding, preparing for sale, and selling the Units and additional security, including all taxes and reasonable attorneys' fees, and second, to the extent not previously paid by Purchaser, to pay Seller all amounts then due or accrued under this Contract, including any accelerated payments and late payment charges. Any surplus shall be paid to the person entitled thereto. Purchaser shall promptly pay any deficiency to Seller. Purchaser acknowledges that sales for cash or on credit to a wholesaler, retailer or user of the Units or additional security, and with or without the Units or additional security being present at such sale, are all commercially reasonable. Purchaser agrees to pay all reasonable attorneys' fees (to the extent permitted by applicable law) and all costs and expenses incurred by Seller in enforcing this Contract. The remedies provided herein shall be cumulative and in addition to all other remedies at law or in equity. If Purchaser fails to perform any of its obligations under this Contract, Seller may (but need not) at any time thereafter perform such obligation, and the expenses incurred in connection therewith shall be payable by Purchaser upon demand.

**9. SECURITY INTEREST; PURCHASER ASSURANCES AND REPRESENTATIONS:** To secure payment of Purchaser's indebtedness to Seller hereunder and the performance of all obligations of Purchaser hereunder, Purchaser hereby grants to Seller a continuing security interest in the Units, and in the equipment, if any, described as Additional Security on the front of this Contract, including all attachments, accessories and optional features for such Units and Additional Security (whether or not installed thereon) and all substitutions, replacements, additions and accessions thereto, and proceeds of all the foregoing including, but not limited to, proceeds in the form of chattel paper. Purchaser will, at its expense, do any act and execute, acknowledge, deliver, file, register and record any Documents which Seller deems desirable in its discretion to protect Seller's security interest and Seller's rights and benefits under this Contract. Purchaser hereby irrevocably appoints Seller as Purchaser's Attorney-in-Fact for the signing and filing of such documents and authorizes Seller to delegate these limited powers. Purchaser acknowledges the signature of Seller or said delegatee upon such documents to be the same as Purchaser's own for all purposes and with the present intent to authenticate the document. Purchaser represents and warrants to Seller that (a) Purchaser has the

power to make, deliver and perform under this Contract; (b) the person executing and delivering this Contract is authorized to do so on behalf of Purchaser; (c) this Contract constitutes a valid obligation of Purchaser, legally binding upon it and enforceable in accordance with its terms; and (d) all credit, financial and other information submitted to Seller in connection with this Contract is and shall be true, correct and complete. Purchaser further represents and warrants to Seller that Purchaser is and shall remain a Limited Liability Corporation registered in the state of CA ("Business Location"); and Purchaser will not change its form of business organization or Business Location without prior written notice to Seller.

10. ASSIGNMENT; COUNTERPARTS: The rights and remedies of Seller under this Contract may be assigned by Seller at any time. If this Contract is assigned by Seller, the term "Seller" shall thenceforth mean Seller's assignee, and if assigned to a partnership, shall thenceforth mean such partnership and, for purposes of Sections 2, 4, 5 and 6, each partner in such partnership. If notified by Seller, Purchaser shall make all payments due hereunder directly to the party designated in such notice, without any offset or deduction whatsoever. Purchaser waives, as to Seller's assignee, all claims and defenses Purchaser may have or assert against Seller and agrees that no such claim or defense will be asserted against Seller's assignee. No assignment of this Contract by Seller shall release any claim Purchaser may have against Seller hereunder. No assignment of this Contract or any right or obligation hereunder may be made by Purchaser without the prior written consent of Seller. This Contract shall be binding upon and inure to the benefit of Seller and Purchaser and their respective successors and assigns. Although multiple counterparts of this document may be signed, only the counterpart accepted, acknowledged and certified by Caterpillar Financial Services Corporation on the signature page thereof as the original will constitute original chattel paper.

11. EFFECT OF WAIVER; ENTIRE AGREEMENT; MODIFICATION OF CONTRACT; NOTICES: No delay or omission to exercise any right or remedy accruing to Seller hereunder shall impair any such right or remedy nor shall it be construed to be a waiver of any breach or default of Purchaser. Any waiver or consent by Seller under this Contract must be in writing specifically set forth. This Contract completely states the rights of Seller and Purchaser with respect to the Units and supersedes all prior agreements with respect thereto. No variation or modification of this Contract shall be valid unless in writing. All notices hereunder shall be in writing, addressed to each party at the address set forth on the front of this Contract or at such other address as may hereafter be furnished in writing.

12. APPLICABLE LAW, JURISDICTION AND JURY TRIAL WAIVER PROVISIONS: This Agreement shall be governed by and construed under the laws of the State of Tennessee, without giving effect to the conflict-of-laws principles thereof, and Purchaser hereby consents to the jurisdiction of any state or federal court located within the State of Tennessee. THE PARTIES HERETO HEREBY WAIVE THE RIGHT TO TRIAL BY JURY IN ANY ACTION ARISING OUT OF OR RELATED TO THIS AGREEMENT, THE OBLIGATIONS OR THE COLLATERAL.

13. SEVERABILITY; SURVIVAL OF COVENANTS: If any provision of this Contract shall be invalid under any applicable law, such provision shall be deemed omitted but the remaining provisions hereof shall be given effect. All obligations of Purchaser under this Contract shall survive the expiration or termination of this Contract to the extent required for their full observance and performance.

PURCHASER ACKNOWLEDGES RECEIPT OF A FULLY COMPLETED COPY OF THIS CONTRACT EXECUTED BY BOTH PURCHASER AND SELLER.

Purchaser(s) and Seller have duly executed this Contract as of ___JUL 2 1 2005___, 20____.

Purchaser(s):
MITCHUM EQUIPMENT, LLC

By _____

Name (PRINT) DARRYL MITCHUM

Title GM _____

Seller:
JOHNSON MACHINERY CO.

By _____

Name (PRINT)  Rodney D. Kolterman

Title  Assistant Finance Manager

**EXHIBIT "B"**

## ASSIGNMENT OF INSTALLMENT SALE CONTRACT
## (WITHOUT RECOURSE)

For valuable consideration, the receipt of which is hereby acknowledged, JOHNSON MACHINERY CO. RIVERSIDE, CA ("Assignor") hereby sells, assigns, transfers and sets over to Caterpillar Financial Services Corporation ("Assignee"), its successors and assigns, WITHOUT RECOURSE as to the financial ability of the Buyer (identified below) to pay, (a) all of Assignor's interest in and rights and remedies under the Installment Sales Contract between Assignor and MITCHUM EQUIPMENT, LLC ("Buyer"), dated as of _____ JUL 2 1 2005 together with any and all notes, guaranties, certificates, instruments or other agreements related thereto (collectively, the "Contract"), including all of Assignor's rights to collect any and all installments due and to become due on the Contract and to take, in Assignor's or Assignee's name, any and all proceedings Assignor might otherwise take, and (b) Assignor's security interest in the "Units" (as such term is defined in the Contract).

Assignor represents and warrants to Assignee that (a) the Contract is genuine and all statements of fact contained therein are true and correct; (b) the Contract has been duly authorized, executed and delivered by the parties thereto, and the signatures thereon are the genuine signatures of the parties whose signatures they purport to be; (c) the Contract is the original and only contract executed in connection with the Units; (d) the Contract constitutes the entire agreement of the parties with respect to the Units; (e) the Contract is a valid and binding agreement of each party thereto, enforceable against such party in accordance with its terms; (f) Assignor has the right to assign the Contract to Assignee; (g) as of the date hereof, no party to the Contract is in default thereunder; (h) the Units have been delivered to Buyer under the Contract in satisfactory condition and have been unconditionally accepted by Buyer; (i) upon acceptance of this Assignment by Assignee, Assignee will have a valid, perfected, first priority security interest in the Units and in all equipment (if any) described as Additional Security in the Contract, and good title to the Contract, free of all liens, claims, security interests and encumbrances; and (j) as of the date hereof, the unpaid balance specified in the Contract is $31,407.60, without offset or deduction of any kind.

This Assignment shall be binding on Assignor, its successors and assigns and shall inure to the benefit of Assignee, its successors and assigns. This Assignment shall become effective only upon acceptance hereof by Assignee.

IN WITNESS WHEREFORE, Assignor has duly executed this Assignment on _____ JUL 2 1 2005 _____.

Caterpillar Financial Services Corporation
(Assignee)

Signature: _____ Bill Schowalter _____

Name (PRINT): _____ Bill Schowalter _____
Documentation Manager

Title: _____

Accepted on: _____ JUL 2 1 2005 _____

JOHNSON MACHINERY CO.
(Assignor)

Signature: _____

Name (PRINT): **Rodney D. Kolterman**

Title: **Assistant Finance Manager**

**EXHIBIT "C"**

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER** [optional]

Phone: 800-331-3282 Fax: 818-662-4141

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

UCC Direct Services
P.O. Box 29071
Glendale CA,  91209-9071

**4515743**

**CACA**

10104 - CATERPILLAR FINANCIAL SERVICES-C
File with: Secretary of State, CA

CT Lien Solutions
Representation of filing

**This filing is Completed**
File Number : 057035186035
File Date   : 22-Jul-2005

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1 DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name(1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **MITCHUM EQUIPMENT, LLC** | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 41330 DATE STREE : #C | MURRIETTA | CA | 92562 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any | |
|---|---|---|---|---|---|
| | | LLC | CA | 200514510034 | ☐ NONE |

2 ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name(2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

3 SECURED PARTY'S (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **CATERPILLAR FINANCIAL SERVICES CORPORATION** | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2120 WEST END AVE | NASHVILLE | TN | 372030986 | USA |

4. This FINANCING STATEMENT covers the following collateral:

ONE (1) CATERPILLAR 216B SKID STEER LOADER S/N: RLL01611
And substitutions, replacements, additions and accessions thereto, now owned or hereafter acquired and proceeds thereof.

| 5. ALTERNATE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. This FINANCING STATEMENT is to be filed [for record] [or recorded] in the REAL ESTATE RECORDS    Attach Addendum    [if applicable] | 7 Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

8 OPTIONAL FILER REFERENCE DATA

| 4515743 | 001-0359039-000 | 0359039-000 |
|---|---|---|

FILING OFFICE COPY - UCC FINANCING STATEMENT (FORM UCC1)   (REV. 05/22/02)

Prepared by CT Lien Solutions [3.23.0]

EXHIBIT "D"

TRANSFER AND ASSUMPTION AGREEMENT (#359039)

This Transfer and Assumption Agreement, dated as of _10 - 9 - 2006_ is between Mitchum Equipment, LLC("Transferor") of 41330 Date Street, Unit C, Murrieta, CA 92562 and Luis C. Stahl DBA Stahl Construction ("Transferee") of 19473 Grand Avenue, Lake Elsinore, CA 92530.

WHEREAS, Transferor and Caterpillar Financial Services Corporation ("Caterpillar") are parties to that certain Installment Sale Contract (Security Agreement) (the "Contract") dated as of July 21, 2005, a copy of which is attached hereto (the "Contract"); and

WHEREAS, the payments remaining due under the Contract as of 9/21/2006 are Forty-seven (47) installments of Five-hundred Twenty-three-dollars and Forty-six-cents ($523.46) each, with the next installment due on September 21, 2006; and

WHEREAS, Transferee wishes to assume all and whatever interest Transferor has in and to the Contract and the equipment described therein (the "Property") and all duties and obligations of the Transferor under the Contract; and

WHEREAS, under the terms of the Contract, Transferor may not assign the Contract or any right or obligation thereunder or any right in the Property without the prior written consent of Caterpillar.

NOW, THEREFORE, for valuable consideration received, Transferor and Transferee agree as follows:

1. Transferor hereby grants and conveys to Transferee, its successors and assigns, all of Transferor's right, title and interest in and to the Contract and the Property, subject, however, to the Contract and all the terms, conditions and provisions thereof, and upon the condition that (i) the Consent set forth below be executed and delivered by Caterpillar and (ii) Transferee executes all agreements, statements and related documents Caterpillar may reasonably require to effect and maintain Caterpillar's ownership of or first priority security interest in, the Property.

2. To induce Caterpillar to execute and deliver the Consent and in consideration of its so doing, Transferee hereby promises to pay (i) all installments in the amounts set forth above and (ii) all other moneys that become due under the Contract after the date hereof to Caterpillar, its successors and assigns.

3. Transferee hereby unconditionally assumes, becomes a party to, and agrees to perform the Contract and all the terms, conditions and provisions thereof and further agrees to pay all amounts that become due under the Contract, as though Transferee was named in the Contract.

4. Transferee agrees not to assert against Caterpillar any defense, setoff, recoupment, claim or counterclaim which Transferee might have against Transferor arising from the assumption of the Contract or otherwise. Transferor and Transferee hereby waive and discharge any defense or claim each or both may have against Caterpillar arising from or in relation to the Contract, this Agreement, or the Property.

5. Transferee acknowledges having read the Contract and agrees to be fully bound by all terms, conditions and provisions of the Contract.

Case 6:11-ap-01784-DS   Doc 16-2   Filed 11/30/11   Entered 11/30/11 18:25:00   Desc
Declaration of Sherese Dossman re: Plaintiffs Trial Declaration   Page 17 of 38

Page 2 of 3

(#359039)

6. Transferee will not sell, rent, transfer, encumber or dispose of any of the Property without the prior written consent of Caterpillar, its successors or assigns.

7. Transferee hereby warrants, represents and agrees that:

(a) (i) if the Contract is a secured transaction, as security for its obligations under the Contract, Transferee grants to Caterpillar a security interest in the Property and all present and future attachments, accessories, accessions, replacements and substitutions therefore, and all proceeds of the foregoing in any form whatsoever or (ii) if the Contract is a lease, Caterpillar is the owner of the Property and Transferee's rights in the Property are limited to those of a lessee as provided in the Contract;

(b) the Transferee's chief executive office is located at the address set forth above, and the Transferee will give Caterpillar at least 30 days' prior written notice of any change in the location of its chief executive office;

(c) the Property will be located at the Transferee's chief executive office as set forth above or, if not located at such address, it is located at the following address:
_____ ; and

(d) (Check the appropriate box and if (i) or (iii) is checked, supply the missing information):

☐ (i) Transferee is a corporation, limited liability company, limited liability partnership, limited partnership or business trust organized under the laws of the state of _____ ;

☐ (ii) Transferee is a type of business entity other than as described in clause (i) above, formed under the laws of one of the States of the United States;

☐ (iii) Transferee is any type of business entity formed under the laws of a country other than the United States or is an individual with a principal residence in any country other than the United States (identify country: _____ ); or

☒ (iv) Transferee is an individual with a principal residence in the United States (including sole proprietorships).

(e) Transferee will cooperate with Caterpillar for the purpose of protecting the interests of Caterpillar in the Property and the Contract, including, without limitation, the execution of all Uniform Commercial Code financing statements requested by Caterpillar. Caterpillar is authorized if permitted by applicable law to file one or more Uniform Commercial Code financing statements, as appropriate, disclosing Caterpillar's interest in the Property and the Contract, without the signature of Transferee or signed by Caterpillar as Attorney-in-fact for Transferee. Transferee hereby appoints Caterpillar (and any of Caterpillar's officers, employees, or agents designated by Caterpillar) as Transferee's attorney, coupled with an interest, to do all things necessary to carry out the terms of this paragraph. Transferee shall execute and deliver to Caterpillar upon request such other instruments and assurances as Caterpillar deems necessary or advisable for the implementation, effectuation, confirmation or perfection of the Contract and any rights of Caterpillar thereunder.

Page 3 of 3

(#359039)

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the
date first written above.

Mitchum Equipment, LLC

Transferor

Signature _____
                Randall Mitchum
Name (PRINT)_____

Title General Manager

Date_____

Transferor

Signature_____
                Darryl Mitchum
Name (PRINT)_____

Title General Manager

Date_____

Luis C. Stahl DBA Stahl Construction

Transferee

Signature _____

Name (PRINT)_____

Title  (An Individual)  Do Not Title

Date_____


FORM OF CONSENT:

Caterpillar Financial Services Corporation hereby accepts and consents to the foregoing
Transfer and Assumption Agreement this _9_ day of _OCTOBER_, _2006_.

Caterpillar Financial Services Corporation

Signature _____

Name (PRINT)_GERALD W. BOATNER_

Title _LEASING SVCS. REP._


100 499

**EXHIBIT "E"**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A NAME & PHONE OF CONTACT AT FILER [optional]
Phone: (800) 331-3282 Fax: (818) 662-4141

B SEND ACKNOWLEDGEMENT TO: (Name and Address)

UCC Direct Services
P.O. Box 29071
Glendale, CA 91209-9071

9430149

CA, Secretary of State

UCC Direct Services
Representation of filing

**This filing is Completed**
File Number : 067087709953
File Date    09-OCT-2006

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1 DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name(1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION NAME | | | |
|---|---|---|---|
| 1b. INDIVIDUAL LAST NAME STAHL | FIRST NAME LUIS | MIDDLE NAME C. | SUFFIX |
| 1c. MAILING ADDRESS 19473 GRAND AVENUE | CITY LAKE ELSINORE | STATE CA / POSTAL CODE 92530 | COUNTRY US |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any | ☐ NONE |

2 ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name(2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION NAME STAHL CONSTRUCTION | | | |
|---|---|---|---|
| 2b. INDIVIDUAL LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS 19473 GRAND AVENUE | CITY LAKE ELSINORE | STATE CA / POSTAL CODE 92530 | COUNTRY US |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION Other | 2f. JURISDICTION OF ORGANIZATION CA | 2g. ORGANIZATIONAL ID#, if any | ☒ NONE |

3 SECURED PARTY'S (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION NAME CATERPILLAR FINANCIAL SERVICES CORPORATION | | | |
|---|---|---|---|
| 3b. INDIVIDUAL LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS 2120 WEST END AVENUE | CITY NASHVILLE | STATE TN / POSTAL CODE 37203 | COUNTRY US |

4 This FINANCING STATEMENT covers the following collateral
(1) CATERPILLAR 216B SKID STEER LOADER S/N: RLL01611

And substitutions, replacements, additions and accessions thereto, now owned or hereafter acquired and proceeds thereof.

| 5 ALTERNATE DESIGNATION [if applicable] | LESEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

6 This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS    Attach Addendum    [if applicable]    | Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional]    ☐ All Debtors    ☐ Debtor 1    ☐ Debtor 2

8 OPTIONAL FILER REFERENCE DATA    001-0359039-000
22071740    T & A

FILING OFFICE COPY - UCC FINANCING STATEMENT (FORM UCC1)    (REV. 05/02/02)

EXHIBIT "F"

# 359039

# GUARANTY OF PAYMENT

THIS GUARANTY ("Guaranty") is made and entered into as of September 21, 2006 by Luis C. Stahl, (hereinafter, referred to as "Guarantor"), in favor of Caterpillar Financial Services Corporation, 2120 West End Avenue, Nashville, TN 37203 (hereinafter referred to as "Seller"), guaranteeing the Indebtedness (as hereinafter defined) of Luis C. Stahl DBA Stahl Construction and its Subsidiaries and its Affiliates) (hereinafter referred to as "Obligor").

**SECTION 1. Guaranty of Obligor's Indebtedness.** Guarantor hereby absolutely, irrevocably and unconditionally agrees to, and by these presents does hereby: (a) guarantee the prompt and punctual payment, performance and satisfaction of all present indebtedness and obligations of Obligor to Seller which Obligor now owes Seller or which Obligor shall at any time or from time to time hereafter owe Seller when the same shall become due, whether in connection with or arising out of conditional sales contacts, leases with existing and future additional schedules thereto, notes or other instruments or agreements, whether direct or contingent, due or to become due, joint or several, primary or secondary, liquidated or unliquidated, secured or unsecured, original or renewed or extended, or by open account or otherwise, and whether representing rentals, principal, interest and/or late charges or other charges of an original balance, an accelerated balance, a balance reduced by part payment or a deficiency after sale of collateral or otherwise; (b) guarantee due regular and punctual payment and prompt performance of any other debt or obligation of any kind or character of Obligor to Seller; and (c) undertake and guarantee to pay on demand and indemnify Seller against all liabilities, losses, costs, attorney's fees, and expenses which may be suffered by Seller by reason of Obligor's default or default of the Guarantor (with all of Obligor's indebtedness and/or obligations as stated above (including all costs, fees and expenses) being hereinafter Individually and collectively referred to under this Guaranty as Obligor's "Indebtedness", which Indebtedness shall be conclusively presumed to have been created in reliance upon this Guaranty).

**SECTION 2. Joint, Several and Solidary Liability.** Guarantor further agrees that its obligations and liabilities for the prompt and punctual payment, performance and satisfaction of Obligor's Indebtedness are independent of any agreement or transaction with any third party and shall be on a "joint and several" and "solidary" basis along with Obligor to the same degree and extent as if Guarantor had been and/or will be a co-borrower, co-principal obligor and/or co-maker of Obligor's Indebtedness. In the event that there is more than one guarantor under this Guaranty, or in the event that there are other guarantors, endorsers, sureties or any other party who may at any time become liable for all or any portion of Obligor's Indebtedness (each, an "Other Obligor"), the provisions hereof shall be read with all grammatical changes thereby rendered necessary and each reference to the Guarantor shall include each and every one of those parties liable for all or any portion of Obligor's Indebtedness and each Guarantor's obligations and liabilities hereunder shall be on a "joint and several" and "solidary" basis along with such Other Obligors.

**SECTION 3. Duration; Cancellation of Guaranty.** This Guaranty and Guarantor's obligations and liabilities hereunder shall remain in full force and effect until such time as Obligor's Indebtedness shall be fully and finally paid, performed and/or satisfied, until such time as this Guaranty may be cancelled by Seller under a written cancellation instrument in favor of Guarantor or otherwise as stated herein.

**SECTION 4. Default by Obligor.** Immediately upon Obligor's default under any of its Indebtedness in favor of Seller, Seller may make demand upon Guarantor and Guarantor unconditionally and absolutely agrees to pay the full then unpaid amount of all of Obligor's Indebtedness (whether at stated maturity, by required prepayment, declaration, acceleration or otherwise) and/or perform any covenant or agreement hereunder guaranteed. Such payment or payments shall be made immediately following demand by Seller at Seller's offices indicated above.

**SECTION 5. Additional Covenants.** Guarantor further agrees that Seller may, at its sole option, at any time, and from time to time, without the consent of or notice to Guarantor, or to any other party, and without incurring any responsibility to Guarantor or to any other party, and without affecting, impairing or releasing the obligations of Guarantor under this Guaranty: (a) discharge or release any party (including, but not limited to, Obligor, secondary obligors of Obligor's indebtedness or any co-guarantor under this Guaranty) who is or may be liable to Seller for Obligor's Indebtedness; (b) sell at public or private sale, exchange, release, impair, surrender, substitute, realize upon or otherwise deal with, in any manner and in any order and upon such terms and conditions as Seller deems best in its uncontrolled discretion, any leased equipment and/or any collateral listed in the Contract or now or hereafter otherwise directly or indirectly securing repayment of Obligor's Indebtedness (all such leased equipment and/or all such collateral shall hereinafter be referred to as the "Equipment"), including without limitation, the purchase of all or any part of such collateral for Seller's own account; (c) change the manner, place or terms of payment and/or available credit (including without limitation increase or decrease in the amount of such payments, available credit or any interest rate adjustments), or change or extend the time of payment of or renew, as often and for such periods as Seller may determine, or alter Obligor's Indebtedness or grant any other indulgence to Obligor and/or any secondary obligors of Obligor's Indebtedness or any co-guarantor under this Guaranty, (d) settle or compromise Obligor's Indebtedness with Obligor and/or any third party or refuse any offer of performance with respect to, or substitutions for, the Indebtedness; (e) take or accept any other security or guaranty for any or all of Obligor's Indebtedness; and/or (f) enter into, deliver, modify, amend or waive compliance with, any instrument, agreement or arrangement evidencing, securing or otherwise affecting, all or any part of Obligor's Indebtedness

**SECTION 6. No Release of Guarantor.** Guarantor's obligations and liabilities under this Guaranty shall not be released, impaired, reduced or otherwise affected by, and shall continue in full force and effect, notwithstanding the occurrence of any event, including without limitation any one or more of the following events. (a) death, insolvency, bankruptcy, arrangement, adjustment, composition, liquidation, disability, dissolution or lack of authority (whether corporate, partnership or trust) of Obligor (or any person acting on Obligor's behalf) or any Other Obligor or any other defense based on or arising out of the lack of validity or unenforceability of the Indebtedness or any agreement or instrument relating thereto or any provisions thereof and/or Obligor's absence or cessation of liability thereunder for any reason, including without limitation, Seller's failure to preserve any right or remedy against Obligor; (b) any change in Obligor's financial condition; (c) partial payment or payments of any amount due and/or outstanding under Obligor's Indebtedness; (d) any change in Obligor's management, ownership, identity or business or organizational structure; (e) any payment by Obligor or any other party to Seller that is held to constitute a preferential transfer or a fraudulent conveyance under any applicable law, or for any reason, Seller is required to fund such payment or pay such amount to Obligor or to any other person; (f) any sale, lease or transfer, whether or not commercially reasonable, of all or any part of Obligor's assets and/or any assignment, transfer or delegation of Obligor's Indebtedness to any third party (whereby this Guaranty shall continue to extend to all sums due from or for the account of Obligor and/or the new or substituted legal entity); (g) any failure to perfect any lien or security interest securing the Indebtedness or preserve any right, priority or remedy against any Equipment; (h) any interruption, change or cessation of relations between Guarantor and Obligor; (i) any defect in, damage to, destruction of or loss of or interference with possession or use of any Equipment for any reason by Obligor or any other person; (j) any act or omission by Seller which increases the scope of Guarantor's risk, including without limitation, negligent administration of transactions with Obligor, and/or (k) any other occurrence or circumstance whatsoever, whether similar or dissimilar to the foregoing, which might otherwise constitute a legal or equitable discharge, release or defense of a guarantor or surety or which might otherwise limit recourse against Guarantor.

**SECTION 7. Waivers by Guarantor.** Guarantor waives, for the benefit of Seller (which waivers shall survive until this Guaranty is released or terminated in writing by Seller). (a) notice of the acceptance of this Guaranty, (b) notice of the existence, creation or incurrence of new and/or additional debt owing from Obligor to Seller; (c) presentment, protest and demand, and notice of protest, demand, nonpayment, nonperformance and dishonor of any and all agreements, notes or other obligations signed, accepted, endorsed or assigned to or by Seller or agreed to between Obligor and Seller; (d) notice of adverse change in Obligor's financial condition or any other fact which might materially increase the risk of Guarantor; (e) any and all rights in and notices or demands relating to any Equipment, including without limitation, all rights, notices, advertisements or demands relating, whether directly or indirectly, to the foreclosure, sale or other disposition of any or all such Equipment or the manner of such sale or other disposition; (f) any claim, right or remedy which Guarantor may now have or hereafter acquire against the Obligor that arises hereunder and/or from the performance by any Other Obligor including, without limitation, any claim, remedy or right of subrogation, reimbursement, exoneration, contribution, indemnification, or participation in any claim, right or remedy of Seller against the Obligor or any security which Seller now has or hereafter acquires with respect to the Obligor, whether or not such claim, right or remedy arises in equity, under contract (express or implied), by statute, under common law or otherwise; (g) notice of

# "359039

any default by Obligor or any other person obligated in any manner for all or any portion of Obligor's Indebtedness and notice of any legal proceedings against such parties; (h) any right of contribution from any Other Obligors; (i) notice and hearing as to any prejudgment remedies; (j) any defense which is premised on an alleged lack of consideration of the obligation undertaken by Guarantor, including without limitation, any defense to the enforcement of this Guaranty based upon the timing of execution of this Guaranty and/or that the Guaranty had been executed after the execution date of any agreements evidencing the Indebtedness; (k) all exemptions and homestead laws; (l) any other demands and notices required by law; (m) all setoffs and counterclaims against Seller and/or Obligor; (n) any defense based on the claim that Guarantor's liabilities and obligations exceed or are more burdensome than those of Obligor; (o) any defense which the Obligor may assert or be able to assert on the underlying Indebtedness or which may be asserted by Guarantor, including but not limited to (i) breach of warranty, (ii) fraud, (iii) statute of frauds, (iv) infancy, (v) statute of limitations, (vi) lender liability, (vii) accord and satisfaction, (viii) payment and/or (ix) usury.

**SECTION 8.  Enforcement of Guarantor's Obligations and Liabilities.**  Guarantor agrees that, should Seller deem it necessary to file an appropriate collection action to enforce Guarantor's obligations and liabilities under this Guaranty, Seller may commence such a civil action against Guarantor without the necessity of first (i) attempting to collect Obligor's Indebtedness from Obligor or from any Other Obligor, whether through filing of suit or otherwise, (ii) attempting to exercise any rights Seller may have against any Equipment, whether through re-lease, the filing of an appropriate foreclosure action or otherwise, (iii) including Obligor or any Other Obligor as an additional party defendant in such a collection action against Guarantor, or (iv) pursuing any other remedy in Seller's power or to mitigate damages   If there is more than one guarantor under this Guaranty, each Guarantor additionally agrees that Seller may file an appropriate collection and/or enforcement action against any one or more of them, without impairing the rights of Seller against any other guarantor under this Guaranty.

**SECTION 9.  Construction.**  This writing is intended as a final expression of this Guaranty agreement and is a complete and exclusive statement of the terms of that agreement, provided however, that the provisions of this Guaranty shall be in addition to and cumulative of, and not in substitution, novation or discharge of, any and all prior or contemporaneous written guaranties or other written agreements by Guarantor (or any one or more of them), in favor of Seller or assigned to Seller by others, all of which shall be construed as complementing each other.  Nothing herein contained shall prevent Seller from enforcing any and all such other guaranties or agreements in accordance with their respective terms.

**SECTION 10.  Successors and Assigns Bound.**  Guarantor's obligations and liabilities under this Guaranty shall be binding upon Guarantor's successors, heirs, legatees, devisees, administrators, executors and assigns  Seller may assign this Guaranty and any and all rights and interests included herein in Seller's sole discretion without notice to Guarantor and the rights and remedies granted to Seller under this Guaranty shall also inure to the benefit of Seller's successors and assigns, as well as to any and all subsequent holder or holders of any of Obligor's Indebtedness subject to this Guaranty, without setoff, counterclaim, reduction, recoupment, abatement, deduction or defense based on any claim Guarantor may have against Seller, such successors and assigns or subsequent holders of Obligor's Indebtedness. Guarantor shall not assign this Guaranty without the prior written consent of Seller.

**SECTION 11.  Termination.**  This Guaranty is irrevocable and may be terminated only as to indebtedness created sixty (60) days after actual receipt by Seller of written notice of termination hereof, provided however, that all Indebtedness incurred, created or arising pursuant to a commitment of Seller made prior to the effective date of such termination (the "Termination Date") and any extensions, renewals or modifications of such Indebtedness (including without limitation loan and/or other commitments) agreed to or committed by Seller prior to the Termination Date whether to be effected by such revocation and shall be deemed to have been incurred prior to termination (irrespective of whether Indebtedness arising thereunder occurs after the Termination Date) and shall be fully covered by this Guaranty. Any termination of this Guaranty shall be ineffective unless upon the Termination Date Guarantor deposits with Seller collateral in the form of cash in an amount not less than the amount of the Indebtedness outstanding on the Termination Date.  Such cash shall be held by Seller in a separate account and shall be returned to Guarantor upon the full and indefeasible payment of all of the Indebtedness.

**SECTION 12.  Governing Law; Waiver of Jury.**  This Guaranty shall be construed liberally in favor of Seller and shall be governed and construed in accordance with the substantive laws of the state of Seller's office specified above or the state of Seller's successors and assigns principal place of business without regard to the conflicts of laws principles thereof. ANY ACTION, SUIT OR PROCEEDING RELATING DIRECTLY OR INDIRECTLY TO THIS GUARANTY OR THE RELATIONSHIP BETWEEN GUARANTOR AND SELLER OR SELLER'S SUCCESSORS AND ASSIGNS, WILL BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE WITHOUT A JURY.  AS SUCH, GUARANTOR HEREBY WAIVES ANY RIGHT TO A JURY TRIAL IN ANY SUCH ACTION, SUIT OR PROCEEDING.  IN THE EVENT OF LITIGATION, THIS GUARANTY MAY BE FILED AS A WRITTEN CONSENT TO TRIAL BY THE COURT This Agreement shall be governed by and construed under the laws of the State of Tennessee, without giving effect to the conflict-of-laws principles thereof, and Guarantor hereby consents to the jurisdiction of any state or federal court located within the State of Tennessee.

**SECTION 13.  Severability.**  If any provision of this Guaranty is held to be illegal, invalid or unenforceable under present or future laws effective during the term hereof, such provision shall be fully severable, this Guaranty shall be construed and enforceable as if the illegal, invalid or unenforceable provision had never comprised a part of it, and the remaining provisions of this Guaranty shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom

IN WITNESS WHEREOF, Guarantor has executed this Guaranty in favor of Seller on the day, month and year first written above.

**GUARANTOR HAS READ AND FULLY UNDERSTANDS ALL OF THE PROVISIONS OF THIS GUARANTY.**

Guarantor: Luis C. Stahl

Signature: _____

Name (PRINT): _LUIS C. STAHL_

Title:  AN INDIVIDUAL (Do Not Title)

(Complete Address, Phone, SSN if Guarantor is an Individual )

Address: 34547 Borchard Road

Lake Elsinore, CA 92530

Phone  951- 609- 1590

SSN  ███████

The Guarantee is executed by the signatory as an individual. Any modification to the title is precluded by the specified title of individual

EXHIBIT "G"



**CAT**
Financial

Caterpillar Financial Services Corporation
2120 West End Ave
Nashville, TN 37203

TO:   Attention:

      Company:    LUIS C. STAHL

      Fax#:

| | |
|---|---|
| Customer: | LUIS C. STAHL |
| Contract: | 001-0359039-000 |
| Model/Serial#: | 216B/RLL01611 |
| Internal Code: | 001 |

| | |
|---|---|
| Buyout Date: | 10/15/2010 |
| Buyout Amount: | $3,716.13 |
| Sales Tax: | $0.00 |
| Addtl. Tax: | $0.00 |
| Cat Insurance: | $293.86 |
| Late Charges: | $392.55 |
| Misc. Charges: | $0.00 |
| Processing Fee: | $0.00 |
| Over Payment: | $0.00 |
| **Total:** | **$4,402.54** |
| Per Diem: | $0.00 |

This buyout is based on the assumption that the _____12/21/2009_____ payment has Not Been Made.

This payoff is not final or binding until all monies to satisfy the debt are collected by us.

Unless we have an additional security interest in the equipment in connection with another transaction, a UCC release will be filed electronically with the appropriate jurisdiction upon receipt and clearing of funds. All other documentation associated with this transaction will be sent to our customer unless written authorization is obtained from the customer prior to our receipt of the payoff funds instructing otherwise.

**Please send payoff funds including the above referenced name and contract number to:**

Prepared by:   Jessica Pritchett

                Special Accounts Rep I

**Wire Instructions**                          **Mail Address**

Chase Manhattan Bank
NY, NY
ABA# 021-000021
Caterpillar Financial Services Corp
Acct# 910-2-469872

EXHIBIT "H"

Open Payments and History

| Contract # | Due Date | Payment Descr | Orig Amt | Amt Paid | Dte Paid | Check # |
|---|---|---|---|---|---|---|
| 0359039-000 | 07/21/09 | RENTAL - PMT#48 | 523.46 | | | |
| 0359039-000 | 07/21/09 | CAT INS | 37.23 | | | |
| 0359039-000 | 08/21/09 | RENTAL - PMT#49 | 523.46 | | | |
| 0359039-000 | 08/21/09 | CAT INS | 37.23 | | | |
| 0359039-000 | 09/21/09 | RENTAL - PMT#50 | 523.46 | | | |
| 0359039-000 | 09/21/09 | CAT INS | 37.23 | | | |
| 0359039-000 | 09/21/09 | INSUFFICIENT FUN | 25.00 | | | |
| 0359039-000 | 10/21/09 | RENTAL - PMT#51 | 523.46 | | | |
| 0359039-000 | 10/21/09 | CAT INS | 37.23 | | | |
| 0359039-000 | 11/21/09 | RENTAL - PMT#52 | 523.46 | | | |
| 0359039-000 | 11/21/09 | CAT INS | 37.23 | | | |
| 0359039-000 | 05/31/09 | LATE CHARGES | 26.17 | | | |
| 0359039-000 | 07/01/09 | LATE CHARGES | 26.17 | | | |
| 0359039-000 | 07/31/09 | LATE CHARGES | 26.17 | | | |
| 0359039-000 | 08/31/09 | LATE CHARGES | 26.17 | | | |
| 0359039-000 | 10/01/09 | LATE CHARGES | 26.17 | | | |
| 0359039-000 | 10/31/09 | LATE CHARGES | 26.17 | | | |
| | | End of Current | | | | |
| 0359039-000 | 06/21/09 | Damage Insurance | 0.00 | 37.23 | 10/06/09 | 1005 |
| 0359039-000 | 06/21/09 | RENTAL - PMT#47 | 523.46 | 523.46 | 10/06/09 | 1005 |
| 0359039-000 | 08/21/09 | CAT INS | 0.00 | -37.23 | 09/11/09 | |
| 0359039-000 | 07/21/09 | CAT INS | 0.00 | -37.23 | 09/11/09 | |
| 0359039-000 | 06/21/09 | Damage Insurance | 0.00 | -37.23 | 09/11/09 | |
| 0359039-000 | 07/31/09 | LATE CHARGES | 26.17 | -26.17 | 09/11/09 | |
| 0359039-000 | 07/01/09 | LATE CHARGES | 26.17 | -26.17 | 09/11/09 | |
| 0359039-000 | 05/31/09 | LATE CHARGES | 26.17 | -26.17 | 09/11/09 | |
| 0359039-000 | 08/21/09 | RENTAL - PMT#49 | 523.46 | -523.46 | 09/11/09 | |
| 0359039-000 | 07/21/09 | RENTAL - PMT#48 | 523.46 | -523.46 | 09/11/09 | |
| 0359039-000 | 06/21/09 | RENTAL - PMT#47 | 523.46 | -523.46 | 09/11/09 | |
| 0359039-000 | 07/31/09 | LATE CHARGES | 26.17 | 26.17 | 09/11/09 | 0 |
| 0359039-000 | 07/01/09 | LATE CHARGES | 26.17 | 26.17 | 09/11/09 | 0 |
| 0359039-000 | 05/31/09 | LATE CHARGES | 26.17 | 26.17 | 09/11/09 | 0 |
| 0359039-000 | 08/21/09 | Damage Insurance | 37.23 | 37.23 | 09/11/09 | 0 |
| 0359039-000 | 08/21/09 | RENTAL - PMT#49 | 523.46 | 523.46 | 09/11/09 | 0 |
| 0359039-000 | 07/21/09 | Damage Insurance | 37.23 | 37.23 | 09/11/09 | 0 |
| 0359039-000 | 07/21/09 | RENTAL - PMT#48 | 523.46 | 523.46 | 09/11/09 | 0 |
| 0359039-000 | 06/21/09 | Damage Insurance | 37.23 | 37.23 | 09/11/09 | 0 |
| 0359039-000 | 06/21/09 | RENTAL - PMT#47 | 523.46 | 523.46 | 09/11/09 | 0 |
| 0359039-000 | 05/01/09 | LATE CHARGES | 26.17 | 26.17 | 08/28/09 | 0 |
| 0359039-000 | 03/31/09 | LATE CHARGES | 26.17 | 26.17 | 08/28/09 | 0 |
| 0359035-000 | 03/03/09 | LATE CHARGES | 26.17 | 26.17 | 08/28/09 | 0 |
| 0359039-000 | 05/21/09 | Damage Insurance | 37.23 | 37.23 | 08/28/09 | 0 |
| 0359039-000 | 05/21/09 | RENTAL - PMT#46 | 523.46 | 523.46 | 08/28/09 | 0 |
| 0359039-000 | 04/21/09 | Damage Insurance | 37.23 | 37.23 | 08/28/09 | 0 |
| 0359039-000 | 04/21/09 | RENTAL - PMT#45 | 523.46 | 523.46 | 08/28/09 | 0 |
| 0359039-000 | 03/21/09 | Damage Insurance | 37.23 | 37.23 | 08/28/09 | 0 |
| 0359039-000 | 03/21/09 | RENTAL - PMT#44 | 523.46 | 523.46 | 08/28/09 | 0 |
| 0359039-000 | 01/31/09 | LATE CHARGES | 26.17 | 26.17 | 07/30/09 | 0 |
| 0359039-000 | 12/31/08 | LATE CHARGES | 26.17 | 26.17 | 07/30/09 | 0 |
| 0359039-000 | 12/01/08 | LATE CHARGES | 26.17 | 26.17 | 07/30/09 | 0 |
| 0359039-000 | 10/31/08 | LATE CHARGES | 26.17 | 26.17 | 07/30/09 | 0 |
| 0359039-000 | 02/21/09 | Damage Insurance | 37.23 | 37.23 | 07/30/09 | 0 |
| 0359039-000 | 02/21/09 | RENTAL - PMT#43 | 523.46 | 523.46 | 07/30/09 | 0 |
| 0359039-000 | 01/21/09 | Damage Insurance | 37.23 | 37.23 | 07/30/09 | 0 |
| 0359039-000 | 01/21/09 | RENTAL - PMT#42 | 523.46 | 523.46 | 07/30/09 | 0 |
| 0359039-000 | 12/21/08 | Damage Insurance | 37.23 | 37.23 | 03/12/09 | 0 |
| 0359039-000 | 12/21/08 | RENTAL - PMT#41 | 523.46 | 523.46 | 03/12/09 | 0 |
| 0359039-000 | 11/21/08 | Damage Insurance | 37.23 | 37.23 | 03/12/09 | 0 |

Open Payments and History

| Contract # | Due Date | Payment Descr | Orig Amt | Amt Paid | Dte Paid | Check # |
|------------|----------|---------------|----------|----------|----------|---------|
| 0359039-000 | 11/21/08 | RENTAL - PMT#40 | 523.46 | 523.46 | 03/12/09 | 0 |
| 0359039-000 | 10/21/08 | Damage Insurance | 37.23 | 37.23 | 11/21/08 | 0 |
| 0359039-000 | 10/21/08 | RENTAL - PMT#39 | 523.46 | 523.46 | 11/21/08 | 0 |
| 0359039-000 | 09/21/08 | Damage Insurance | 37.23 | 37.23 | 09/04/08 | 0 |
| 0359039-000 | 09/21/08 | RENTAL - PMT#38 | 523.46 | 523.46 | 09/04/08 | 0 |
| 0359039-000 | 08/31/08 | LATE CHARGES | 26.17 | 26.17 | 09/04/08 | 0 |
| 0359039-000 | 08/21/08 | Damage Insurance | 37.23 | 37.23 | 09/04/08 | 0 |
| 0359039-000 | 08/21/08 | RENTAL - PMT#37 | 523.46 | 523.46 | 09/04/08 | 0 |
| 0359039-000 | 07/31/08 | LATE CHARGES | 26.17 | 26.17 | 09/04/08 | 0 |
| 0359039-000 | 07/21/08 | Damage Insurance | 37.23 | 37.23 | 08/25/08 | 0 |
| 0359039-000 | 07/21/08 | RENTAL - PMT#36 | 523.46 | 523.46 | 08/25/08 | 0 |
| 0359039-000 | 07/01/08 | LATE CHARGES | 26.17 | 26.17 | 07/23/08 | 0 |
| 0359039-000 | 05/31/08 | LATE CHARGES | 26.17 | 26.17 | 07/23/08 | 0 |
| 0359039-000 | 06/21/08 | Damage Insurance | 37.23 | 37.23 | 07/23/08 | 0 |
| 0359039-000 | 06/21/08 | RENTAL - PMT#35 | 523.46 | 523.46 | 07/23/08 | 0 |
| 0359039-000 | 05/01/08 | LATE CHARGES | 26.17 | 26.17 | 06/20/08 | 3021 |
| 0359039-000 | 05/21/08 | Damage Insurance | 37.23 | 37.23 | 06/20/08 | 3021 |
| 0359039-000 | 05/21/08 | RENTAL - PMT#34 | 523.46 | 523.46 | 06/20/08 | 3021 |
| 0359039-000 | 03/31/08 | LATE CHARGES | 26.17 | 26.17 | 06/06/08 | 3000 |
| 0359039-000 | 04/21/08 | Damage Insurance | 37.23 | 37.23 | 06/06/08 | 3000 |
| 0359039-000 | 04/21/08 | RENTAL - PMT#33 | 523.46 | 523.46 | 06/06/08 | 3000 |
| 0359039-000 | 03/02/08 | LATE CHARGES | 26.17 | 26.17 | 04/28/08 | 2667 |
| 0359039-000 | 03/21/08 | Damage Insurance | 37.23 | 37.23 | 04/28/08 | 2667 |
| 0359039-000 | 03/21/08 | RENTAL - PMT#32 | 523.46 | 523.46 | 04/28/08 | 2667 |
| 0359039-000 | 02/21/08 | Damage Insurance | 37.23 | 37.23 | 03/14/08 | 2510 |
| 0359039-000 | 02/21/08 | RENTAL - PMT#31 | 523.46 | 523.46 | 03/14/08 | 2510 |
| 0359039-000 | 12/01/07 | LATE CHARGES | 26.17 | 26.17 | 01/30/08 | 1175 |
| 0359039-000 | 01/21/07 | Damage Insurance | 37.23 | 37.23 | 01/30/08 | 1175 |
| 0359039-000 | 01/21/08 | RENTAL - PMT#30 | 523.46 | 523.46 | 01/30/08 | 1175 |
| 0359039-000 | 12/21/07 | Damage Insurance | 37.23 | 37.23 | 12/12/07 | 2328 |
| 0359039-000 | 12/21/07 | RENTAL - PMT#29 | 523.46 | 523.46 | 12/12/07 | 2328 |
| 0359039-000 | 11/21/07 | Damage Insurance | 37.23 | 37.23 | 12/12/07 | 2328 |
| 0359039-000 | 11/21/07 | RENTAL - PMT#28 | 523.46 | 523.46 | 12/12/07 | 2328 |
| 0359039-000 | 10/21/07 | Damage Insurance | 37.23 | 37.23 | 10/16/07 | 1075 |
| 0359039-000 | 10/21/07 | RENTAL - PMT#27 | 523.46 | 523.46 | 10/16/07 | 1075 |
| 0359039-000 | 10/01/07 | LATE CHARGES | 26.17 | 26.17 | 10/16/07 | 1075 |
| 0359039-000 | 09/21/07 | Damage Insurance | 37.23 | 37.23 | 10/16/07 | 1075 |
| 0359039-000 | 09/21/07 | RENTAL - PMT#26 | 523.46 | 523.46 | 10/16/07 | 1075 |
| 0359039-000 | 07/01/07 | LATE CHARGES | 26.17 | 26.17 | 08/29/07 | 1037 |
| 0359039-000 | 08/21/07 | Damage Insurance | 37.23 | 37.23 | 08/29/07 | 1037 |
| 0359039-000 | 08/21/07 | RENTAL - PMT#25 | 523.46 | 523.46 | 08/29/07 | 1037 |
| 0359039-000 | 05/31/07 | LATE CHARGES | 26.17 | 26.17 | 07/20/07 | 1779 |
| 0359039-000 | 07/21/07 | Damage Insurance | 37.23 | 37.23 | 07/20/07 | 1779 |
| 0359039-000 | 07/21/07 | RENTAL - PMT#24 | 523.46 | 523.46 | 07/20/07 | 1779 |
| 0359039-000 | 06/21/07 | Damage Insurance | 37.23 | 37.23 | 07/20/07 | 1779 |
| 0359039-000 | 06/21/07 | RENTAL - PMT#23 | 523.46 | 523.46 | 07/20/07 | 1779 |
| 0359039-000 | 05/21/07 | Damage Insurance | 37.23 | 37.23 | 06/06/07 | 1602 |
| 0359039-000 | 05/21/07 | RENTAL - PMT#22 | 523.46 | 523.46 | 06/06/07 | 1602 |
| 0359039-000 | 12/01/06 | LATE CHARGES | 26.17 | 26.17 | 04/18/07 | 1430 |
| 0359039-000 | 04/21/07 | Damage Insurance | 37.23 | 37.23 | 04/18/07 | 1430 |
| 0359039-000 | 04/21/07 | RENTAL - PMT#21 | 523.46 | 523.46 | 04/18/07 | 1439 |
| 0359039-000 | 03/21/07 | Damage Insurance | 37.23 | 37.23 | 03/14/07 | 1265 |
| 0359039-000 | 03/21/07 | RENTAL - PMT#20 | 523.46 | 523.46 | 03/14/07 | 1265 |
| 0359039-000 | 02/21/07 | Damage Insurance | 37.23 | 37.23 | 02/03/07 | 1162 |
| 0359039-000 | 02/21/07 | RENTAL - PMT#19 | 523.46 | 523.46 | 02/03/07 | 1162 |
| 0359039-000 | 01/21/07 | Damage Insurance | 37.23 | 37.23 | 01/09/07 | 1023 |
| 0359039-000 | 01/21/07 | RENTAL - PMT#18 | 523.46 | 523.46 | 01/09/07 | 1023 |
| 0359039-000 | 12/21/06 | Damage Insurance | 37.23 | 37.23 | 12/11/06 | 1143 |

Open Payments and H.  ory

| Contract # | Due Date | Payment Descr | Orig Amt | Amt Paid | Dte Paid | Check # |
|------------|----------|---------------|----------|----------|----------|---------|
| 0359039-000 | 12/21/06 | RENTAL - PMT#17 | 523.46 | 523.46 | 12/11/06 | 1143 |
| 0359039-000 | 10/01/06 | LATE CHARGES | 26.17 | 26.17 | 12/07/06 | 7161 |
| 0359039-000 | 11/21/06 | Damage Insurance | 37.23 | 37.23 | 12/07/06 | 7161 |
| 0359039-000 | 11/21/06 | RENTAL - PMT#16 | 523.46 | 523.46 | 12/07/06 | 7161 |
| 0359039-000 | 10/21/06 | Damage Insurance | 37.23 | 0.69 | 12/07/06 | 7161 |
| 0359039-000 | 10/21/06 | Damage Insurance | 37.23 | 36.54 | 10/28/06 | 1116 |
| 0359039-000 | 10/21/06 | RENTAL - PMT#15 | 523.46 | 523.46 | 10/28/06 | 1116 |
| 0359039-000 | 10/31/06 | Trans & Assump F | 275.00 | 275.00 | 10/10/06 | 1037 |
| 0359039-000 | 07/31/06 | LATE CHARGES | 26.17 | 26.17 | 10/10/06 | 1037 |
| 0359039-000 | 07/01/06 | LATE CHARGES | 26.17 | 3.03 | 10/10/06 | 1037 |
| 0359039-000 | 09/21/06 | Damage Insurance | 37.23 | 37.23 | 10/10/06 | 1039 |
| 0359039-000 | 09/21/06 | RENTAL - PMT#14 | 523.46 | 523.46 | 10/10/06 | 1039 |
| 0359039-000 | 08/21/06 | Damage Insurance | 37.23 | 37.23 | 08/19/06 | 1099 |
| 0359039-000 | 08/21/06 | RENTAL - PMT#13 | 523.46 | 523.46 | 08/19/06 | 1099 |
| 0359039-000 | 07/21/06 | Damage Insurance | 37.23 | 37.23 | 07/31/06 | 1091 |
| 0359039-000 | 07/21/06 | RENTAL - PMT#12 | 523.46 | 523.46 | 07/31/06 | 1091 |
| 0359039-000 | 07/01/06 | LATE CHARGES | 26.17 | 20.00 | 07/31/06 | 1091 |
| 0359039-000 | 07/01/06 | LATE CHARGES | 26.17 | 3.14 | 07/13/06 | 1085 |
| 0359039-000 | 06/21/06 | Damage Insurance | 37.23 | 37.23 | 07/13/06 | 1085 |
| 0359039-000 | 06/21/06 | RENTAL - PMT#11 | 523.46 | 523.46 | 07/13/06 | 1085 |
| 0359039-000 | 05/31/06 | LATE CHARGES | 26.17 | 26.17 | 07/13/06 | 1085 |
| 0359039-000 | 05/21/06 | Damage Insurance | 37.23 | 37.23 | 07/10/06 | 7568 |
| 0359039-000 | 05/21/06 | RENTAL - PMT#10 | 523.46 | 523.46 | 07/10/06 | 7568 |
| 0359039-000 | 04/21/06 | Damage Insurance | 37.23 | 37.23 | 04/28/06 | 7530 |
| 0359039-000 | 04/21/06 | RENTAL - PMT#9 | 523.46 | 523.46 | 04/28/06 | 7530 |
| 0359039-000 | 03/31/06 | Damage Insurance | 37.23 | 37.23 | 03/15/06 | 1064 |
| 0359039-000 | 03/21/06 | RENTAL - PMT#8 | 523.46 | 523.46 | 03/15/06 | 1064 |
| 0359039-000 | 02/21/06 | Damage Insurance | 37.23 | 37.23 | 02/23/06 | 1060 |
| 0359039-000 | 02/21/06 | RENTAL - PMT#7 | 523.46 | 523.46 | 02/23/06 | 1060 |
| 0359039-000 | 01/21/06 | Damage Insurance | 37.23 | 37.23 | 01/26/06 | 1053 |
| 0359039-000 | 01/21/06 | RENTAL - PMT#6 | 523.46 | 523.46 | 01/26/06 | 1053 |
| 0359039-000 | 12/21/05 | Damage Insurance | 37.23 | 37.23 | 12/21/05 | 1043 |
| 0359039-000 | 12/21/05 | RENTAL - PMT#5 | 523.46 | 523.46 | 12/21/05 | 1043 |
| 0359039-000 | 11/21/05 | Damage Insurance | 37.23 | 37.23 | 11/19/05 | 1041 |
| 0359039-000 | 11/21/05 | RENTAL - PMT#4 | 523.46 | 523.46 | 11/19/05 | 1041 |
| 0359039-000 | 10/21/05 | Damage Insurance | 37.23 | 37.23 | 10/20/05 | 1033 |
| 0359039-000 | 10/21/05 | RENTAL - PMT#3 | 523.46 | 484.15 | 10/20/05 | 1033 |
| 0359039-000 | 10/21/05 | RENTAL - PMT#3 | 523.46 | 39.31 | 09/20/05 | 1023 |
| 0359039-000 | 09/21/05 | Damage Insurance | 37.23 | 37.23 | 09/20/05 | 1023 |
| 0359039-000 | 09/21/05 | RENTAL - PMT#2 | 523.46 | 523.46 | 09/20/05 | 1023 |
| 0359039-000 | 08/21/05 | Damage Insurance | 37.23 | 37.23 | 08/20/05 | 1012 |
| 0359039-000 | 08/21/05 | RENTAL - PMT#1 | 523.46 | 523.46 | 08/20/05 | 1012 |

**EXHIBIT "I"**

# Customer Collection Comments

**CCAN - Name:** 277396 - LUIS C. STAHL

**DBA:** STAHL CONSTRUCTION

**Legal Name:** LUIS C. STAHL DBA STAHL CONSTRUCTION

| Created Date/Time | Type | Created By | Note / Comment |
|---|---|---|---|
| 11/03/2009 08:32:30 | Service Request Note | PRITCJL | SR # 1-180111050 Customer filed Ch. 11, sending bankruptcy package to legal. |
| 11/02/2009 13:57:59 | Note | RENY | EMAIL SENT. Hi Stacy, I was referred to your guidance for bankruptcy. Could you verify if bankruptcy was filed by Mr. Luis C. Stahl and code appropriately if he has? Conversation notes  chapter 11 bankruptcy on 9/1/09 Case#6:0930494-RN and his attorney's name is Stuart Wald. Thank you in advance, |
| 10/28/2009 22:47:44 | Varolii Note | SADMIN | Call Type = COLLECTIONS-OUTBOUND-PAST_DUE, Result = Answering Machine, Final Check Point = 119_AM Message Full, Transfer = No Transfer, Attempts = 1, Date/Time = 10-28-2009 10:21:16 America/Los_Angeles |
| 10/28/2009 22:47:44 | Varolii Note | SADMIN | Call Type = COLLECTIONS-OUTBOUND-PAST_DUE, Result = Live Answer, Final Check Point = 305_Main Message Event Heard, Transfer = No Transfer, Attempts = 2, Date/Time = 10-28-2009 14:09:04 America/Los_Angeles |
| 10/20/2009 11:17:41 | Note | RENY | lvm for Stacey Black - need to verify Ch11 filed and code acct |
| 10/14/2009 04:15:33 | Varolii Note | SADMIN | Call Type = COLLECTIONS-OUTBOUND-PAST_DUE, Result = Answering Machine Hangup, Final Check Point = , Transfer = No Transfer, Attempts = 3, Date/Time = 10-12-2009 13:32:13 America/Los_Angeles |
| 10/14/2009 04:15:33 | Varolii Note | SADMIN | Call Type = COLLECTIONS-OUTBOUND-PAST_DUE, Result = Connected, Final Check Point = , Transfer = No Transfer, Attempts = 1, Date/Time = 10-12-2009 10:47:27 America/Los_Angeles |
| 10/14/2009 04:15:33 | Varolii Note | SADMIN | Call Type = COLLECTIONS-OUTBOUND-PAST_DUE, Result = Answering Machine, Final Check Point = 119_AM Message Full, Transfer = No Transfer, Attempts = 2, Date/Time = 10-12-2009 11:22:26 America/Los_Angeles |
| 10/14/2009 04:15:33 | Varolii Note | SADMIN | Call Type = COLLECTIONS-OUTBOUND-PAST_DUE, Result = Live Answer, Final Check Point = 310_Message and Menu Options Heard, Transfer = No Transfer, Attempts = 4, Date/Time = 10-12-2009 16:52:15 America/Los_Angeles |
| 10/05/2009 16:44:19 | Note | DALLAHG | varolii call. Mr. Stahl said they filed chapter 11 banruptcy on 9/1/09 Case#6.0930494-RN and his attorney's name is Stuart Wald.  Cstmr did not have the attorney's number on hand, but said he would cb to let us know. |

Report Generated for SITZESG          on 11/3/2009

1

# Customer Collection Comments

| CCAN - Name: | 277396 - LUIS C. STAHL |
| DBA: | STAHL CONSTRUCTION |
| Legal Name: | LUIS C. STAHL DBA STAHL CONSTRUCTION |

| Created Date | Type | Created By | Note / Comment |
|---|---|---|---|
| 10/05/2009 12:58:52 | Note | BARRILW | RCV'D CK#1005, $560.69, K359039/ INV 12004963 |
| 09/28/2009 23:53:56 | Varolii Note | SADMIN | Call Type = COLLECTIONS-OUTBOUND-PAST_DUE, Result = Connected, Final Check Point =, Transfer = No Transfer, Attempts = 1, Date/Time = 09-28-2009 10:21:36 America/Los_Angeles |
| 09/28/2009 23:53:56 | Varolii Note | SADMIN | Call Type = COLLECTIONS-OUTBOUND-PAST_DUE, Result = Connected, Final Check Point =, Transfer = No Transfer, Attempts = 2, Date/Time = 09-28-2009 10:49:11 America/Los_Angeles |
| 09/28/2009 23:53:56 | Varolii Note | SADMIN | Call Type = COLLECTIONS-OUTBOUND-PAST_DUE, Result = Connected, Final Check Point =, Transfer = No Transfer, Attempts = 3, Date/Time = 09-28-2009 11:04:29 America/Los_Angeles |
| 09/28/2009 23:53:56 | Varolii Note | SADMIN | Call Type = COLLECTIONS-OUTBOUND-PAST_DUE, Result = Answering Machine, Final Check Point = 119_AM Message Full, Transfer = No Transfer, Attempts = 4, Date/Time = 09-28-2009 13:56:04 America/Los_Angeles |
| 09/28/2009 23:53:56 | Varolii Note | SADMIN | Call Type = COLLECTIONS-OUTBOUND-PAST_DUE, Result = Answering Machine Hangup, Final Check Point =, Transfer = No Transfer, Attempts = 5, Date/Time = 09-28-2009 16:22:02 America/Los_Angeles |
| 09/28/2009 11:19:28 | Note | RENY | 4688 lvm |
| 09/24/2009 14:07:56 | Service Request Note | TEMPEML | SR # : 1-174857745 Sent customer default letter and executed affidavit evidencing default for K359039 |
| 09/24/2009 10:00:31 | Note | RENY | 1590 - lmtc |
| 09/24/2009 09:59:04 | Note | RENY | 4688 - lvm |
| 09/11/2009 22:43:16 | Varolii Note | SADMIN | Call Type = COLLECTIONS-OUTBOUND-PAST_DUE, Result = Connected, Final Check Point =, Transfer = No Transfer, Attempts = 1, Date/Time = 09-10-2009 11:56:02 America/Los_Angeles |
| 09/11/2009 22:43:16 | Varolii Note | SADMIN | Call Type = COLLECTIONS-OUTBOUND-PAST_DUE, Result = No Answer, Final Check Point =, Transfer = No Transfer, Attempts = 4, Date/Time = 09-10-2009 17:44:22 America/Los_Angeles |
| 09/11/2009 22:43:16 | Varolii Note | SADMIN | Call Type = COLLECTIONS-OUTBOUND-PAST_DUE, Result = No Answer, Final Check Point =, Transfer = No Transfer, Attempts = 3, Date/Time = 09-10-2009 17:28:10 America/Los_Angeles |
| 09/11/2009 22:43:16 | Varolii Note | SADMIN | Call Type = COLLECTIONS-OUTBOUND-PAST_DUE, Result = No Answer, Final Check Point =, Transfer = No Transfer, Attempts = 2, Date/Time = 09-10-2009 17:09:06 America/Los_Angeles |
| 09/04/2009 22:33:00 | Varolii Note | SADMIN | Call Type = COLLECTIONS-OUTBOUND-PAST_DUE, Result = Connected, Final Check Point =, Transfer = No Transfer, Attempts = 1, Date/Time = 09-03-2009 11:56:03 America/Los_Angeles |

**Customer Express**℠

## Customer Collection Comments

| CCAN - Name: | 277396 - LUIS C. STAHL |
| DBA: | STAHL CONSTRUCTION |
| Legal Name: | LUIS C. STAHL DBA STAHL CONSTRUCTION |

| Created Date | Type | Created By | Note / Comment |
|---|---|---|---|
| 09/04/2009 22:33:00 | Varolii Note | SADMIN | Call Type = COLLECTIONS-OUTBOUND-PAST_DUE, Result = No Answer, Final Check Point =, Transfer = No Transfer, Attempts = 2, Date/Time = 09-03-2009 17:24:05 America/Los_Angeles |
| 09/04/2009 22:33:00 | Varolii Note | SADMIN | Call Type = COLLECTIONS-OUTBOUND-PAST_DUE, Result = No Answer, Final Check Point =, Transfer = No Transfer, Attempts = 3, Date/Time = 09-03-2009 17:40:04 America/Los_Angeles |
| 09/04/2009 22:33:00 | Varolii Note | SADMIN | Call Type = COLLECTIONS-OUTBOUND-PAST_DUE, Result = No Answer, Final Check Point =, Transfer = No Transfer, Attempts = 4, Date/Time = 09-03-2009 17:56:10 America/Los_Angeles |
| 08/26/2009 14:37:58 | Note | RENY | 4688 - tt carlos - said he can set up 2 pmts for the 28th - advised was to make 4 pmts this month, said money is just not coming in the way he thought, said set up 2 for 28th and 2 more for the 10th, attempted to set up 2 more for the fourth week of sept but cust said he did not know if he would have funds, advised set up 3 pmts aug 28th and 3 pmts 9/11<br><br>pp 8/28 for Mar-May<br>amt: 1760.58<br>conf# 540484<br><br>pp9/11 for June-Aug<br>amt: 1760.58<br>conf # 540485 |
| 08/12/2009 10:15:21 | Note | RENY | 4688 lvm to set up double pmt |
| 07/30/2009 09:52:30 | Payment Made | RENY | Payment Made on 07/30/2009 via WU Phone Pay. Chk#/Conf# 531202. Payment Amount $1226.06. |
| 07/30/2009 09:52:30 | Note | RENY | cb from carlos - affirmed 2 pmt arrangement and double pmts next few months until caught up<br><br>amt: $1226.06<br><br>conf # 531202 |
| 07/30/2009 09:23:52 | Note | RENY | lvm 4688 |
| 07/28/2009 13:20:24 | Note | RENY | 4688 lvm |

Report Generated for SITZESG          on 11/3/2009

3

## Customer Collection Comments

**CCAN - Name:** 277396 - LUIS C. STAHL

**DBA:** STAHL CONSTRUCTION

**Legal Name:** LUIS C. STAHL DBA STAHL CONSTRUCTION

| Created Date | Type | Created By | Note / Comments |
|---|---|---|---|
| 07/27/2009 17:28:24 | Note | RENY | TT CARLOS 4688 - SAID HE DID GET MONEY - CALL IN FIRST THING TOMORROW FOR 2 PMTS, TWO WEEKS LATER 2 PMTS AND 2 WEEKS LATER 2 PMTS, - ASKED 4 PMTS IN AUGUST, SAID YES, ADVISED CALL DIRECT LINE FIRST THING TOMORROW MORNING |
| 07/23/2009 09:47:42 | Note | RENY | 4688 tt Carlos - said he is getting check Fri, will be able to make 2 pmts of the bat and continue making double pmts ever two weeks. advised must make pmt monday, said for sure |
| 07/08/2009 16:15:02 | Note | RENY | 4688 tt Carlos - said he will know monday because it's been only a week on project and he needs to ask the amt of his draw - advise must get cb eod monday or have to default, said ok |
| 03/12/2009 12:41:41 | Payment Made | PALMES2 | Payment Made on 03/12/2009 via WU Phone Pay. Chk#/Conf# 479999.  Payment Amount $1121.38. |
| 03/12/2009 12:41:41 | Note | PALMES2 | made payment arrangements with Carlos to bring account current.  paid $1121.38 #479999 |
| 03/05/2009 07:19:00 | Varolii Note | SADMIN | Call Type = COLLECTIONS-OUTBOUND-PAST_DUE, Result = Alert Cancelled, Final Check Point = , Transfer = , Attempts = 1, Date/Time = 03-02-2009 08:02:43 America/Los_Angeles |
| 02/27/2009 12:17:42 | Note | PALMES2 | left a msg to call regarding past due payments on account.  Let them know that as I have not received a call back on the account, will have to send to recovery |
| 02/17/2009 16:56:30 | Note | PALMES2 | left msg with receptionist regarding acct being defaulted and sent to recovery |
| 01/21/2009 11:12:56 | Note | PALMES2 | Jan handles A/p and is out today, left a msg for Luis |
| 01/13/2009 15:41:06 | Service Request Note | TEMPEML | SR # 1-133215930 Sent customer default letter and executed affidavit evidencing default for  K359039 |
| 01/13/2009 00:00:00 | Collection Comment | tempeml | Default Hold Released on 01/13/2009 |
| 01/08/2009 14:25:25 | Service Request Note | MADDORX | SR # 1-133215930 001-0359039-000 GG QSV  $8,400.00  @80% PLA $2,319.06 |
| 01/02/2009 14:27:28 | Note | PALMES2 | pcl requested |
| 01/02/2009 14:27:13 | Service Request Note | PALMES2 | SR # 1-133215930 PCL requested |
| 12/17/2008 17:55:11 | Note | CAMPBN | 3 m2cb |

Report Generated for SITZESG          on 11/3/2009

4

# Customer Collection Comments

**CCAN - Name:** 277396 - LUIS C. STAHL
**DBA:** STAHL CONSTRUCTION
**Legal Name:** LUIS C. STAHL DBA STAHL CONSTRUCTION

| Created Date | Type | Created By | Note / Comment |
|---|---|---|---|
| 12/08/2008 16:37:10 | Note | CAMPBN | lf msg for janurary to cb on the nov invoice |
| 11/24/2008 09:48:53 | Note | CAMPBN | lf msg for Janurary or Louis to cb |
| 11/18/2008 17:10:35 | Note | CAMPBN | Le msg with January for Louis to cb on the Oct invocie |
| 11/11/2008 09:23:45 | Note | CAMPBN | lf msg for Louis with Mike to cb on the Oct invoce |
| 08/19/2008 17:04:25 | Note | SITTENL | TT Mike again, lm for Luis to cb re 7/21 pmt |
| 08/14/2008 13:27:52 | Note | SITTENL | TT Mike and lm with him for Luis re 7/21 pmt |
| 07/23/2008 14:25:53 | Note | BOLTOEB | (714)231-4688 tt cust wu for $613.03 conf#397647 |
| 07/23/2008 14:25:53 | Payment Made | BOLTOEB | Payment Made on 07/23/2008 via WU Phone Pay. Chk#/Conf# 397647. Payment Amount $613.03. |
| 06/18/2008 11:43:02 | Note | COOKTE | spk to carol (spouse) @ 951-609-1590 s/d would mail May pmt out tdy and would send June pmt by EOM. |
| 06/04/2008 14:54:54 | Service Request Note | BRADLSD | SR #: 1-108237065 001-0359039-000 GG QSV $11,200.00 @80%; PLA $2,950.34 |
| 06/03/2008 15:47:56 | Service Request Note | KENNER | SR # 1-108237065 "Sent customer default ltr and executed affidavit evidencing default K359039" |
| 05/23/2008 13:24:21 | Note | BOLTOEB | (714)231-4688 tt cust says call carol 951-609-1590 tt lady said she is not in will gv msg |
| 05/15/2008 17:02:04 | Note | BRADLSD | LEFT MSG FOR CAROL TO CALL ME BACK |
| 04/23/2008 14:45:47 | Note | WASHBBX | left message with fellow who said he would give the message to Carol |
| 04/18/2008 13:59:00 | Note | BLACKKV | lm |
| 12/07/2007 16:23:00 | Note | BLACKKV | S/T MR STAHL- SAID HE WILL HAVE HIS WIFE MAIL THE PAYMENT ON MONDAY |
| 12/07/2007 16:21:41 | Note | BLACKKV | CALLED 1590- N/A |

## Customer Collection Comments

CustomerExpress℠

**CCAN - Name:** 277396 - LUIS C. STAHL

**DBA:** STAHL CONSTRUCTION

**Legal Name:** LUIS C. STAHL DBA STAHL CONSTRUCTION

| Creation Date | Type | Created By | Note / Comment |
|---|---|---|---|
| 10/12/2007 11:12:21 | Note | PARDUSX | check mailed 10/11 // no check info handy |
| 07/19/2007 14:24:49 | Note | HOLLIWA | 7/19 Mr. Stahl is still positive that ck has already been mailed.. He is picking up his wife today at the airport He will have her call me tomorrow with the check info for mailed June pmt. |
| 07/09/2007 17:10:56 | Note | HOLLIWA | 7/9 Mr. Stahl will have his wife call me back re June pmt...He believes that pmt has already been mailed. |
| 12/08/2006 16:25:18 | Note | DAVISMW | LMTC |

| | |
|---|---|
| In re: LUIS CARLOS STAHL<br><br>                                              Debtor(s).<br><br>Caterpillar Financial Services Corporation v. Luis Carlos Stahl | CHAPTER: 7<br><br>CASE NUMBER: 6:09-bk-30494-DS<br><br>Adversary Proceeding No. 6:11-ap-01784-DS |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

20980 Redwood Road, Suite 200; Castro Valley, CA 94546

A true and correct copy of the foregoing document described as <u>DECLARATION OF SHERESE DOSSMAN RE: PLAINTIFF'S TRIAL DECLARATION</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **_November 30, 2011,_** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **_November 30, 2011,_** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

| | | | |
|---|---|---|---|
| Hon. Deborah J. Saltzman<br>(Chamber Copy)<br>U.S. Bankruptcy Court<br>3420 Twelfth Street, Ctrm 304<br>Riverside, CA 92501-3819 | Intake Office/Courtesy Copy<br>Attn: Ctrm Deputy for Judge<br>Saltzman<br>U.S. Bankruptcy Court<br>Central District of California<br>3420 12th Street<br>Riverside, CA 92501-3819 | <u>Debtor</u><br>Luis Carlos Stahl<br>34547 Borchard Road<br>Lake Elsinore, CA 92530 | <u>Co Debtor</u><br>Carol Rossetta Stahl<br>34547 Borchard Road<br>Lake Elsinore, CA 92530 |

☒  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **_Fill in Date Document is Filed,_** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| November 30, 2011 | Alison Lambert | */s/Alison Lambert* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| | |
|---|---|
| In re: LUIS CARLOS STAHL<br><br>Debtor(s).<br><br>Caterpillar Financial Services Corporation v. Luis Carlos Stahl | CHAPTER: 7<br>CASE NUMBER: 6:09-bk-30494-DS<br>Adversary Proceeding No. 6:11-ap-01784-DS |

**ADDITIONAL SERVICE INFORMATION** (if needed):

**SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- Dennis G Bezanson on behalf of Creditor Barton N. Dreyer, Trustee of the Barton N. Dreyer Rovcable Trust: dennis.bezanson@bbklaw.com, arthur.johnston.@bbklaw.com; kenneth.burgess@bbklaw.com; bknotices@bbklaw.com; dennis.bezanson@bbklaw.com
- John A Boyd on behalf of Creditor Security Service Federal Credit Union: fednotice@tclaw.net
- Arturo Cisneros (TR) amctrustee@mclaw.org, acisneros@ecf.epiqsystems.com
- Jennifer Witherell Crastz on behalf of Creditor Texas AgFinance, FLCA jcrastz@hemar-rousso.com
- Vincent V Frounjian on behalf of Creditor AMERICAN HONDA FINANCE CORPORATION vvf@pacbell.net
- Everett L Green on behalf of U.S. Trustee United States Trustee (RS) everett.l.green@usdoj.gov
- David F Makkabi on behalf of Creditor Deutsche Bank National Trust Co. cmartin@pprlaw.net
- Lee S Raphael on behalf of Creditor BAC Home Loans Servicing, LP cmartin@pprlaw.net
- Ramesh Singh on behalf of Interested Party Courtesy NEF claims@recoverycorp.com
- Cathy Ta on behalf of Creditor Barton N. Dreyer, Trustee of the Barton N. Dreyer Rovcable Trust cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com; Kenneth.Burgess@bbklaw.com
- United States Trustee (RS) ustpregion16.rs.ecf@usdoj.gov
- Stuart J Wald on behalf of Debtor Luis Stahl stuart.wald@gmail.com

**SERVED BY U.S. MAIL**

| | | |
|---|---|---|
| Counsel for Debtor | Chapter 7 Trustee | United States Trustee (RS) |
| Stuart J. Wald, Esq. | Arturo Cisneros (TR) | 3685 Main Street, Suite 300 |
| 36154 Coffee Tree Pl. | 3403 Tenth Street, Suite 711 | Riverside, CA 92501 |
| Murrieta, CA 92562 | Riverside, CA 92501 | |

Counsel for the U.S. Trustee
Everett L Green
Office of the US Trustee
3685 Main St Ste 300
Riverside, CA 92501

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*

**F 9013-3.1.PROOF.SERVICE**